NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 14 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SUMMIT ICE MELT SYSTEMS, INC.,

        Plaintiff-ctr-defendant - Appellant,

  v.

HOTEDGE, LLC,

        Defendant-ctr-claimant - Appellee.

No. 25-914

D.C. No.
3:24-cv-00066-ART-CSD

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
Anne R. Traum, District Judge, Presiding

Submitted October 9, 2025[**]
Las Vegas, Nevada

Before: BENNETT, SANCHEZ, and H.A. THOMAS, Circuit Judges.

Plaintiff-Appellant Summit Ice Melt Systems, Inc., appeals the district court's

denial of its motion for a preliminary injunction against Defendant-Appellee

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

HotEdge, LLC, alleging trademark infringement under federal and Nevada law for HotEdge's use of Summit's registered trademark "PRO."[1] We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). We affirm.

We review the district court's denial of a preliminary injunction for abuse of discretion. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1123 (9th Cir. 2014). A court abuses its discretion when it rests its decision on an erroneous legal standard or a clearly erroneous finding of fact. *Id*. "[W]e review legal conclusions de novo," and reject only clearly erroneous factual findings—those which are "illogical, implausible, or without support . . . in the record." *Id.* (quoting *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012)).

In deciding whether to grant a preliminary injunction, courts must determine whether (a) plaintiffs have demonstrated a likelihood of success on the merits; (b) plaintiffs would suffer irreparable harm absent an injunction; (c) the balance of equities supports granting a preliminary injunction; and (d) the public interest would be served by enjoining the challenged activity. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction is an 'extraordinary and drastic remedy.'" *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (quoting 11A *Wright & Miller's Federal Practice & Procedure* § 2948, at 129 (2d ed. 1995)).

---

[1] Although Summit Ice filed a motion for a temporary restraining order, the district court converted that motion into a motion for a preliminary injunction.

To demonstrate a likelihood of success on the merits for its trademark infringement claim, Summit must show that (1) it has a "protected ownership interest" in the "PRO" mark, and that (2) HotEdge's use of "PRO" will likely confuse consumers and infringe on Summit's rights. *Pom Wonderful*, 775 F.3d at 1124; *see BBK Tobacco & Foods, LLP v. Aims Grp. USA Corp.*, 723 F. Supp. 3d 973, 986 (D. Nev. 2024) ("The elements of [Nevada] common law claims for trademark infringement and unfair competition mirror the federal standard."). Summit registered the PRO mark, and thus as the district court found, Summit satisfies the first part of the *Pom Wonderful* test. *Pom Wonderful*, 775 F.3d at 1124.

To determine customer confusion, courts look to the eight factors identified in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979):

> (1) [S]trength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

*Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1252 (9th Cir. 2022).

"These factors are neither exhaustive nor dispositive; it is the totality of facts in a given case that is dispositive." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021) (cleaned up).

The district court concluded that the degree of care, strength of the asserted mark, and willful infringement all weighed against Summit. The district also

3                                                                    25-914

concluded that similarity of the marks and Summit and HotEdge's being in direct competition weighed in favor of Summit.[2]

1. In deciding whether the district court abused its discretion, we look to whether the "court based its decision on clearly erroneous findings of fact or erroneous legal principles." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). We discern no legal or clear factual error in the district court's *Sleekcraft* analysis. The district court applied the appropriate tests in making each of its determinations, and its factual findings—including the parties' different uses of the "PRO" mark, the degree of care likely to be exercised by purchasers, and whether HotEdge willfully infringed on Summit's mark—are supported by the record.

2. The district court also found that the fifth factor, "marketing channels used," was not at issue, because under this court's precedent, advertising online is so commonplace that use of the internet for marketing is "properly accorded . . . no weight." *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 725–26 (9th Cir. 2024). Because essentially every commercial enterprise uses the internet today, parties' shared marketing channels are only relevant if their products

---

[2] The district court found that three factors were not relevant to its analysis: actual confusion, the marketing channels used, and the likelihood of expansion. On appeal, Summit challenges only the district court's decision not to consider the marketing channels used. We reject that challenge below.

appear on "a lesser-known or product-specific search engine," rather than the broader web. *Id*. Summit identified only "the internet" as the relevant marketing channel. Accordingly, the district court did not abuse its discretion in assigning no weight to the parties' shared marketing channel.

3. Summit argues that the district court violated the party presentation rule as established in *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020). Summit argues that the district court's finding that HotEdge needed to use the PRO designator for its professional products

> violated the party presentation rule because HotEdge did not argue that, as the district court found, "their products are meant for construction professionals." HotEdge only contended, along with citation to a declaration in support, that it needs to use the term "PRO" to mean the product is "[1] intended to be [2] installed by [3] professional roofers."

In Summit's telling, this finding violated the party presentation rule because "a mark does [not] take on the meaning of its intended customers." But the district court did not violate the party presentation rule in reaching the obvious conclusion that, based on HotEdge's representations about its intended use of the term PRO, HotEdge's PRO line of products are designed for professional use by construction professionals.

4. Summit also argues that the district court "erred in not applying the rule that use of identical marks on identical products is likely to cause confusion." But this assertion presupposes that the parties use the term PRO in an identical matter.

To the contrary, the district court found that there were "meaningful differences" between HotEdge's and Summit's employment of the term "PRO." Thus, the district court did not err in concluding that the marks were sufficiently dissimilar to avoid confusion "as a matter of course." *Brookfield*, 174 F.3d at 1056.

5. The district court did not abuse its discretion in finding that Summit has not shown a likelihood of success on the merits of its trademark infringement claim. We "need not consider the other [*Winter*] factors" in light of this conclusion. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

**AFFIRMED.**

25-914